**SO ORDERED.**

**SIGNED this 07 day of February, 2011.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for print publication

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| In re: | |
|---|---|
| JAMES C. MONTGOMERY and SAPORA M. TURNER-MONTGOMERY, | CASE NO. 10-20869 CHAPTER 13 |
| DEBTORS. | |

**MEMORANDUM OPINION AND JUDGMENT GRANTING DEBTORS' OBJECTION TO THE PRIORITY CLAIM OF THE INTERNAL REVENUE SERVICE AND DETERMINING THE INTEREST RATE ON THE INTERNAL REVENUE SERVICE'S SECURED CLAIM**

The matter before the Court is Debtors' "Objection to Claim #3-1 of Internal Revenue Service" (hereafter "IRS") which asserts that Debtors' 2001 income tax liability is improperly classified as an unsecured priority claim under 11 U.S.C. § 507(a)(8) and that challenges the interest rate applicable to the secured claim. Debtors James

Montgomery and Sapora Turner-Montgomery appear by their counsel, David A. Reed. The Internal Revenue Service (hereafter "IRS") appears by Lanny D. Welch, United States Attorney for the District of Kansas, and David Zimmerman, Assistant United States Attorney. There are no other appearances. The Court has jurisdiction.[1]

The parties filed briefs in support of their respective positions. Having reviewed those materials and the challenged proof of claim, the Court grants Debtors' Objection to priority status for their 2001 income tax liability. The Court also holds that the interest rate on the IRS's secured claim is governed by 11 U.S.C. § 511[2] and applicable nonbankruptcy law.

**FINDINGS OF FACT.**

The underlying facts are not in dispute.

On November 13, 2000, Debtors filed their first voluntary petition under Chapter 13 of the Bankruptcy Code, Title 11 of the United States Code, case number 00-44239-jwv-13. The case was dismissed on February 25, 2002, after Debtors defaulted on their plan payments. On March 28, 2002, Debtors filed a second voluntary petition under Chapter 13, case number 02-21000-13-DLS ("Case 02-21000"). In the spring of 2002,

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). There is no objection to venue or jurisdiction over the parties.

[2] Future references to Title 11 in the text shall be to the section number only.

Debtors obtained an extension to file their 2001 income taxes, extending the date the return was due to August 15, 2002. Case 02-21000 was dismissed on October 1, 2004.

On October 15, 2004, Debtors filed their third voluntary petition under Chapter 13, case number 04-24389-13-DLS ("Case 04-24389"). An Order Confirming Chapter 13 Plan was filed on December 23, 2005. On August 17, 2006, Debtors filed a Notice of Voluntary Conversion to Chapter 7, and an order of conversion was entered on August 18, 2006. On January 4, 2007, the Court entered an Order Discharging Debtors in Case 04-24389, and Debtors' 2001 tax liability was excepted from discharge pursuant to § 507(a)(8)(A)(i) and § 523(a)(1).

Debtors filed the instant bankruptcy case on March 24, 2010, as a voluntary petition under Chapter 13, case number 10-20869-13-DLS ("Case 10-20869"). Pursuant to 11 U.S.C. § 341(a), the meeting of creditors for Case 10-20869 was held on April 21, 2010. The IRS timely filed its original proof of claim on April 6, 2010, which set forth its secured claim in the amount of $1,750.00 (comprised of tax due of $0.00, penalty of $827.50, and interest to the petition date of $922.50), its unsecured priority claim in the estimated amount of $37,262.48, and its general unsecured claim in the amount of $28,088.16, for a total estimated claim of $67,100.64. The tax periods included in the unsecured priority claim were 1998, 1999, 2000, 2001, 2005, 2008, and 2009.

On April 9, 2010, Debtors filed their "Objection to Claim # 3-1 of Internal Revenue Service," challenging the priority classification for tax years 1998, 1999, 2000,

3

and 2001. Debtors requested that the claim be amended to allow the tax claims for those years only as non-priority. Debtors concurred in the secured claim for $1,750, plus interest at the "discount factor." The IRS subsequently filed two Amended Proofs of Claim, restating the 1998, 1999, and 2000 tax year liabilities as general unsecured claims. On June 25, 2010, the IRS filed a Third Amended Proof of Claim. The secured claim was not amended. The 2001 tax liability was shown as an unsecured priority claim in the amount of $8,078.00, plus interest to the petition date of $4,741.33.

ANALYSIS.

**I. PRIORITY OF CLAIM FOR 2001 INCOME TAXES.**

**A. SECTION 507 ESTABLISHES PRIORITY STATUS FOR CERTAIN INCOME TAX CLAIMS.**

Priority status for certain tax claims is established by § 507(a)(8)(A)(i). It provides in relevant part:

> (a) The following expenses and claims have priority in the following order:
> . . . .
> 8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for —
>> (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition —
>> (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

4

Under this provision, "[i]f the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under § 507(a)(8)(A)(i) and is nondischargeable in bankruptcy under § 523(a)(1)(A)."[3] In a Chapter 13 case, the confirmed plan must provide for payment of the priority tax claim in full.[4] The three years is commonly referred to as the "lookback period." Generally, the priority status preserves enforcement of a tax liability in a bankruptcy case if the taxpayer files for relief within three years of the date the return was due.

In this case, the return for Debtors' 2001 income taxes was due on August 15, 2002. The instant Chapter 13 case was filed on March 24, 2010, long after the three-year period expired. However, when the IRS's ability to enforce the tax liability is impacted by the stay of a prior bankruptcy or a confirmed plan, the unnumbered paragraph following § 507(a)(8)(G) (hereafter "Suspension Paragraph") may operate to preserve the priority status by altering the method for calculating the three-year lookback period. It provides:

> *An otherwise applicable time period specified in this paragraph shall be suspended for any period during* which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90

---

[3] *Young v. United States*, 535 U.S. 43, 46 (2002).

[4] 11 U.S.C. § 1322(a)(2).

> days; *plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.* (Emphasis added.)

**B. POSITIONS OF THE PARTIES.**

The parties agree as to the relevant facts. In this case, Debtors' return was due on August 15, 2002; however, Case 02-21000 was pending on that date and remained pending until the case was dismissed on October 1, 2004. Debtors filed Case 04-24389 on October 15, 2004, under Chapter 13, and a plan was confirmed on December 23, 2005. The 2004 case was converted to Chapter 7 on August 18, 2006. An order of discharge, which excepted the 2001 taxes from discharge pursuant to § 507(a)(8)(A)(i) and § 523(a)(1), was filed on January 4, 2007. This case was filed on March 24, 2010. The year 2008 was a leap year.

The parties disagree as to the construction of the Suspension Paragraph. Specifically, Debtors allege that a "natural reading" of the paragraph requires only one addition of 90 days to the three-year lookback period when that period has been tolled due to the filing of multiple previous bankruptcies.[5] In support of the foregoing, Debtors rely primarily upon *Ron Pair*,[6] along with legislative history. Under this construction,

---

[5] Doc. 28.

[6] *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (Court addressed the "natural reading" of statutory language and the reading mandated by a statute's grammatical structure).

6

Debtors assert that the three-year lookback period, calculated by excluding the tolling periods defined by the Suspension Paragraph, plus 90 days, expired before this bankruptcy was filed. Specifically, Debtors would include in the lookback calculation the thirteen days in October 2004 after Case 02-21000 was dismissed on October 1, 2004, and the filing on October 15, 2004 of Case 04-24389, the 1,173 days after the discharge of January 4, 2007, and the 90-day grace period provided by the statute. Under this calculation, the lookback period expired on March 23, 2010, one day before this case was filed on March 24, 2010.

The IRS responds that it has properly calculated the period under § 507(a)(8)(A)(i), and that an additional 90-day period must be added for each bankruptcy filing giving rise to a stay and for each period when collection was precluded by the existence of a confirmed plan. The IRS relies upon a recent decision by the Bankruptcy Court for the Eastern District of New York, *In re Abir*,[7] legislative history, and public policy concerns. Under this interpretation of § 507(a)(8), the IRS submits that when calculating the lookback period, the running of time should be suspended for the period when no case was pending in 2004, plus 90 days, and from October 15, 2004, when case 04-24389 was filed, until January 4, 2007, when the stay in that case was terminated by entry of the discharge order, plus 90 days. Based upon this calculation, the IRS argues

---

[7] *Abir v. United States (In re Abir),* 2010 WL 421124 (Bankr. E.D.N.Y. 2010) (IRS stayed from collection action for prepetition taxes as a result of both an IRS collection due-process hearing and debtors' subsequent bankruptcy case filing and dismissal).

7

that the 2001 tax liability remains a priority claim since "the debtors' intervening bankruptcy cases suspended the three-year look-back period pursuant to 11 U.S.C. § 507(a)(8) for so much of the intervening period that the three-year look-back period had not yet expired when the Debtors filed their petition in the instant bankruptcy case."[8]

### C. ANALYSIS OF PRIORITY ISSUE.

Tax claims eligible for priority treatment under § 507(a)(8)(A)(i) are those for which the return was due within three years of the date of filing the petition. Congress intended the time limitation to reflect a balance between the competing interests of the debtor, the taxing authority, and the other creditors.[9] As an involuntary creditor, the taxing authority is granted priority treatment. "[T]he taxing authority [has] three years to pursue delinquent debtors and obtain secured status. If a debtor files bankruptcy before that three-year period has run, the taxing authority is given a priority in order to compensate for its temporary disadvantaged position."[10]

When initially enacted, the three-year lookback period set forth in § 507(a)(8)(A)(i) contained no express tolling provision for time during which collection was suspended due to a bankruptcy filing. In 2002, the Supreme Court in *Young*[11] held

---

[8] Doc. 30.

[9] 4 *Collier on Bankruptcy*, ¶ 507.11[1][b] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2010).

[10] *Id. (quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 190 (1977)).

[11] *Young*, 535 U.S. at 43.

8

that the three-year lookback period is a statute of limitations "because it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced."[12] It then applied the "hornbook law" that "limitations periods are customarily subject to equitable tolling," finding the rule doubly true in bankruptcy courts, which are courts of equity. In *Young*, the debtors' return for 1992 income taxes was due on October 15, 1993. On May 1, 1996, the Youngs sought protection under Chapter 13. On March 12, 1997, one day before the Chapter 13 case was voluntarily dismissed, the debtors filed a new case under Chapter 7. A discharge was granted on June 17, 1997, and the case was closed. The IRS then demanded payment of the 1992 tax debt. The debtors responded that the Code provided a loophole whereby collection of taxes could be stayed because of the pendency of a Chapter 13 case and discharged in a subsequent Chapter 7 case filed more than three years after the return was due. The Supreme Court disagreed and closed the alleged loophole, holding that the lookback period excluded time when the debtors' Chapter 13 case was pending and, thus, the lookback period of § 507(a)(8)(A)(i) was tolled during the pendency of the Chapter 13 case, so that the three-year lookback period had not expired when the Chapter 7 case was filed and the taxes were not discharged.[13]

In 2005, as a part of the Bankruptcy Abuse Prevention and Consumer Protection

---

[12] *Id.* at 47.

[13] *Id.* at 54.

Act ("BAPCPA"), Congress added the Suspension Paragraph, the unnumbered paragraph after § 507(a)(8)(G) quoted above. It both codified and expanded the rule of *Young*. In accord with the holding in *Young*, the paragraph expressly provides for tolling of the lookback period. It also adds 90 days to the suspension period. Congress amended § 507(a)(8) in line with its previously stated public policy to balance three competing interests, those of "(1) general creditors, who should not have funds available for payments of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose 'fresh start' should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting."[14]

The disagreement between Debtors and the IRS presents a question of law as to the construction of the Suspension Paragraph. The IRS contends that the phrase "plus 90 days" applies independently to each of the bankruptcy events which toll the lookback period. Its focus is on the phrases "a prior case" and "any time" and the word "or" in the phrase "*any time* during which the stay of proceedings was in effect in *a prior case* under this title *or* during which the collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days."[15] Debtors, on the other hand, contend that

---

[14] S. Rep. No. 95-989, 14 (1978), reprinted in D *Collier on Bankruptcy* App. Pt. 4(e)(i) (15th ed. rev. 2009).

[15] Suspension Paragraph following § 507(a)(8)(G) (emphasis added). Under this construction, the three-year lookback period did not begin to run between the dismissal of Case no. 02-21000 on October 1, 2004, and the filing of Case 04-24389 on October 15, 2004, since the separate 90-day period suspended the commencement of the three-year period until 90 days after October 1, 2004, or until December 30,

10

the phrase "plus 90 days" is not dependent upon the preceding two phrases, since it is separated from them by a comma. They construe that paragraph to mean that the 90 days is added once if, after deducting the time for the identified tolling events from the calendar time which expired between the date the return was due and the date of filing of the current case, more than three years has elapsed.

In a question of statutory interpretation, the Court starts with "the language of the statute itself."[16] The language of the Suspension Paragraph that determines the central issue in this case is as follows:

> An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax . . . ; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

The Court interprets the language of a statute in accordance with its plain meaning.[17] In this case, a plain reading of the language must also emphasize the statute's grammatical structure. The last clause — "plus 90 days" — is separated from the rest of the statute by a comma. In *Ron Pair*, the issue before the Supreme Court also concerned the grammatical structure of a statute where the relevant phrase was set aside by commas.

---

2004. Doc. 30, n.2.

[16] *Ron Pair*, 489 U.S. at 241.

[17] *Patterson v. Shumate*, 504 U.S. 753, 757 (1992).

The Court stated, "[A]s a result [of the commas], the phrase . . . stands independent of the language that follows."[18]

In the Suspension Paragraph, the phrase in question is separated from the preceding clause by a comma and it stands independent of the language that precedes it. Thus, the punctuation of the phrase "plus 90 days" indicates that it should be added to the three-year lookback period after subtraction of the period when the bankruptcy stay was in effect or collection was precluded by a confirmed plan in a prior bankruptcy case.

The Court rejects the IRS's argument that the singular reference to "a prior case under this title" and the singular reference to "any time during which collection was precluded by the existence of 1 or more confirmed plans" indicates that Congress intended "plus 90 days" to refer back to each "prior case" and each "time." The construction under which the IRS would add 90 days to the period when there was no bankruptcy case pending in October 2004 fails to properly consider the operation of the Suspension Paragraph. By its terms, the suspension calculation is relevant only when calculating the "otherwise applicable time period specified in" § 507(a)(8)(A)(i) for the purposes of determining priority status in a pending case. The calculation of the lookback period is made only once, in a pending case when a claim of priority status is asserted. The impact of all of the intervening suspension periods is fully recognized by inclusion of

---

[18] *Ron Pair*, 489 U.S. at 241.

all such periods in the calculation of the three-year lookback without the addition of another 90 days for each such occasion. Further, if the issue of priority status had arisen in Case 04-24389, filed on October 15, 2004, the running of the three-year lookback would have commenced on August 15, 2002 (the due date of Debtors' 2001 tax return), and would have ended on October 15, 2004, when Case 04-24389 was filed, a period of two years and two months. Because the lookback period so computed would have been less than three years, there would have been no occasion to consider the addition of 90 days. Now that the question of the lookback period is arising in a subsequent case, the Court finds that the 90 days which could have been added if more than three years had expired from the date the return was due and the filing of the October 2004 case is irrelevant, just as it would have been in 2004.

The position of the IRS would penalize Debtors for having filed multiple cases and would upset the intended balance between the competing interests of Debtors, the IRS, and other creditors. The Suspension Paragraph provides a statutory basis for calculation of the equitable tolling period in accord with *Young*. It also adds 90 days to that period, a matter not involved in *Young*.[19] The rationale for the addition of 90 days is not apparent,

---

[19] The Court notes that the *Young* bankruptcy court decision relied on 11 U.S.C. § 108(c) and 26 U.S.C. § 6503, a Tax Code statute of limitation which suspended the collection of taxes for any period the debtor's assets were in the control or custody of the United States and for six months thereafter. *In re Young*, 1999 WL 500799 (Bankr. D.N.H. 1999). The First Circuit also noted that some courts relied upon these sections when finding the three-year lookback was tolled during the pendency of prior bankruptcy cases. *In re Young*, 233 F.3d 56, 60 (1st Cir. 2000). The Supreme Court opinion, however, is silent about the import of these two statutes and it has been held that, before the BAPCA amendment of § 507(a)(8), *Young* precluded the application of an additional six months to the tolling period for each bankruptcy. *In re Distad*, 392 B.R. 482, 488 (Bankr. D. Utah 2008).

13

Case 10-20869    Doc# 39    Filed 02/07/11    Page 13 of 19

as the Court knows of no principle of law or equity upon which it is based. Since the lookback period and the Suspension Paragraph, which amends the calculation of the lookback period, are relevant only after a bankruptcy is filed, they do not define a period during which the IRS can take affirmative action to protect its position. The statute of limitations for enforcement of tax liabilities is determined by the Internal Revenue Code, not the Bankruptcy Code, and the Internal Revenue Code has its own tolling provision.[20] The Suspension Paragraph calculates a time period not controlled by the IRS, but based solely upon conduct of the debtors, which causes the running of the three-year lookback period to be suspended. The addition of one 90-day period for each time a bankruptcy stay goes into effect would punish debtors for repeated filings, thereby interfering with their fresh start. It would conflict with the rule that "'exceptions to discharge are to be narrowly construed' and doubts resolved in the debtor's favor."[21] Further, the resulting enhancement of the status of the taxing authority based upon the number of filings would disturb the balance of interests between Debtors, the IRS, and other creditors created by the three-year lookback period.

The IRS relies on *In re Abir*,[22] a recent unpublished decision by the Bankruptcy Court for the Eastern District of New York that deals with the addition of 90 days under

---

[20] *See* 26 U.S.C. § 6503.

[21] *In re Sweeney*, 341 B.R. 35, 40 (10th Cir. BAP 2006) (*quoting Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997)).

[22] *In re Abir*, 2010 WL 421124.

14

Case 10-20869    Doc# 39    Filed 02/07/11    Page 14 of 19

§ 507(a)(8). The *Abir* decision determined the dischargeability of tax obligations where the debtor had filed requests with the IRS for collection due-process hearings, followed by two involuntary bankruptcy filings. *Abir* thus illustrates the cumulative effect of the two aspects of suspension.[23] As to the nonbankruptcy suspension, sections of the Internal Revenue Code were held applicable to suspend the running of any period of limitations while the requested hearings were pending. Therefore, pursuant to the first portion of the Suspension Paragraph, the time during which collection was prohibited by nonbankruptcy law, plus 90 days, was subtracted from the lookback period. There is no nonbankruptcy stay at issue in this case. In *Abir*, the nonbankruptcy suspension was followed by an involuntary Chapter 11 case which was dismissed approximately two weeks before the filing of the Chapter 7 case in which the priority of the taxes was in issue. When determining that the three-year lookback period had not expired, but without expressly calculating the total suspension period, the court considered the period of the bankruptcy stay, plus 90 days.[24] However, in *Abir*, unlike this case, there were not two bankruptcy stays included in the bankruptcy suspension calculation. Therefore, *Abir* does not address

---

[23] *See* 4 *Collier on Bankruptcy* ¶507.11[9] ("The suspension of time periods established by either of these provisions [the nonbankuptcy prohibition arising from a request for hearing and the bankruptcy stay] is cumulative."). The Court rejects the IRS's interpretation of this statement as supporting its view that 90 days should be added to the suspension period for each bankruptcy stay.

[24] Under this Court's construction of the Suspension Paragraph, the 90 days would not be considered unless more than three years would have expired when the nonbankruptcy stay and the bankruptcy stay were applied to the period between the date the returns were last due and the filing of the instant case. The *Abir* court, when concluding that three-year lookback had not expired, without explanation, started with the date that the returns were filed, rather than the date the returns were due. Under this calculation, three years had not expired even if the extra 90 days for the bankruptcy stay was not considered.

15

the issue in this case or support the IRS's construction of the Suspension Paragraph.

For the foregoing reasons, the Court rejects the IRS's position that when enforcement of a tax liability is interrupted by the filing of multiple bankruptcy cases, 90 days is to be added to each suspension period. This Court interprets the "plus 90 days" as being applicable only once, after the total number of days of suspension caused by bankruptcy filings is subtracted from the time elapsed between the due date of the tax return and the filing of the bankruptcy case in which priority is an issue. To construe the statute otherwise would not be consistent with the language of the Code or the Congressional balancing of competing interests reflected in the three-year lookback period.

The next step in determining priority status is to apply the foregoing interpretation of the Suspension Paragraph. In calculating the number of days when the IRS's ability to collect was suspended, the Court begins with the day after Debtors' tax return was due[25] and excludes all days when the IRS could not have undertaken enforcement during any part of the day. The three-year lookback period to determine the priority of the IRS's tax claim began on August 16, 2002 (the day after the 2001 tax return was due), and ended on March 24, 2010, when this case was filed, a total of 2778 days (which equals 7 years, 7 months, and 9 days).[26] Pursuant to the Suspension Paragraph, the running of the three-

---

[25] *See* Fed. R. Bankr. P. 9006(a)(1)(A).

[26] *See* www.timeanddate.com.

year lookback period was suspended from August 16, 2002, through October 1, 2004, when Case 02-21000 was pending (778 days, which equals 2 years, 1 month, and 17 days), and from October 15, 2004, through January 4, 2007, when Case 04-24389 was pending (811 days, which equals 2 years, 2 months, and 20 days), for a total bankruptcy suspension period of 1589 days.[27] When the 90 days of the Suspension Paragraph are added, the maximum suspension period is 1679 days. The three-year lookback period is 1097 days, 365 days per year times three, plus two days since 2004 and 2008 were leap years. The 2778 days which elapsed between the August 15, 2002, tax return due date and the date of filing of the instant case, March 24, 2010, minus the maximum suspension period of 1679 days, is 1099 days, two days more than the three-year lookback period of 1097 days.

Alternatively, the period can be calculated by adding all of the intervening days when enforcement was permitted and determining if the total time was greater than three years plus 90 days. The days enforcement was permitted are October 1, 2004, through October 15, 2004, 14 days, plus January 4, 2007, through March 24, 2010, 1175 days, for a total of 1189 days. Three years (including two days for the leap years in 2004 and 2008) is 1097 days, plus 90 days is 1187 days, two days less than the available enforcement time of 1189 days.

---

[27] When calculating the suspension period, both the beginning and end dates are excluded. This is the method used by the IRS. Doc. 30, p. 12. If the end dates were included, the suspension period would be increased by two days, so more than the three-year lookback, plus 90 days, would still have elapsed.

17

### D. CONCLUSION AS TO PRIORITY OF CLAIM FOR 2001 INCOME TAXES.

Under both calculation methods, more than the permitted lookback period had expired before the instant bankruptcy case was filed, and the IRS's claim for 2001 income taxes is not entitled to priority status. Debtors' objection is sustained as to this issue.

### II. SECURED CLAIM INTEREST RATE.

Debtors also objected to the method by which the IRS calculated interest on the secured portion of the claim. The IRS argues that pursuant to § 511(a), the interest rate on its secured claim for $1750.00 is to be "determined under applicable nonbankruptcy law," rather than a bankruptcy discount rate of interest, as contended by Debtors. Section 511(a) reads:

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

If interest is due to the IRS on its secured claim, pursuant to § 511(a), that interest is determined under applicable nonbankruptcy law.

### CONCLUSION.

For the foregoing reasons, the Court sustains Debtors' objection to the priority status of the IRS's claim for 2001 income taxes. In addition, the Court finds that the interest rate on the IRS's secured claim is determined under applicable nonbankruptcy

law, not under bankruptcy law.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**JUDGMENT.**

Judgment is hereby entered sustaining Debtors' objection to the priority status of their liability for 2001 income taxes. Judgment is entered in favor of the IRS as to the interest rate applicable to the secured tax claim.

**IT IS SO ORDERED.**

# # #